UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

Case No.:

In Admiralty

ACCELERANT SPECIALTY
INSURANCE COMPANY, HADRON
SPECIALTY INSURANCE
COMPANY, PALOMAR EXCESS
AND SURPLUS LINES INSURANCE
COMPANY, TEXAS INSURANCE
COMPANY, AND LLOYD'S
SYNDICATES PER UMR
B0507G02400002,

      Plaintiffs,

v.

BLUE CORAL BOAT RENTAL, LLC,

      Defendant.          /

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiffs Accelerant Specialty Insurance Company ("Accelerant"), Hadron Specialty Insurance Company ("Hadron"), Palomar Excess and Surplus Insurance Company ("Palomar"), Texas Insurance Company ("TIC"), and Lloyd's Syndicates per UMR B0507G02400002 ("Lloyd's") (collectively hereinafter, "Plaintiffs") hereby sue Defendant Blue Coral Boat Rental, LLC ("Blue Coral"), and in support thereof state as follows:

1

## JURISDICTION AND VENUE

1. This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201.

2. Plaintiffs designate this as an admiralty and maritime cause within the meaning of Fed. R. Civ. P. 9(h). This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1333, as it involves disputes regarding a marine insurance contract. Plaintiffs invoke the provisions of Rules 9(h), 38(e), and 82 of the Federal Rules of Civil Procedure.

3. Venue is proper within the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district and because the forum selection clause in the subject policy of insurance provides that disputed arising thereunder be heard in "the Federal District court within which You the Assured resides or the Federal District court within which your insurance agent resides." Blue Coral is a Florida Limited Liability Company with its principal place of business at 1404 Del Prado Boulevard South, Suite 110, Cape Coral, Florida 33910; therefore, venue is proper in this District.

4. All conditions precedent to the filing of this action have occurred, been waived, or have otherwise been complied with.

5.      Pursuant to the requirements of 28 U.S.C. § 2201 and Article III, Section 2 of the United States Constitution, a case or controversy exists and has existed between the Parties since the beginning of this action, such that an action for declaratory judgment is ripe and appropriate.

## PARTIES

6.      At all times material to this action, Accelerant is and was a domestic surplus lines insurer organized and existing under the laws of the State of Arkansas, with its office and principal place of business located in the State of Georgia.

7.      At all times material to this action, Accelerant was subject to service of process in the State of New York.

8.      At all times material to this action, TIC is and was a licensed and admitted surplus lines insurer organized and existing under the laws of the State of Texas, with its office and principal place of business located in the State of Nebraska.

9.      At all times material to this action, Hadron is and was a licensed and admitted surplus lines insurer organized and existing under the laws of the State of Arkansas, with its office and principal place of business located in the State of Georgia.

10.      At all times material to this action, Palomar is and was a licensed and admitted surplus lines insurer organized and existing under the laws of the State of

Arizona, with its office and principal place of business located in the State of California.

11.   At all times material to this action, Lloyd's is and was a licensed and admitted surplus lines insurer organized and existing under the laws of the United Kingdom, with its office and principal place of business located in the United Kingdom.

12.   At all times material to this action, Blue Coral was a Florida Limited Liability Company with its principal place of business in Cape Coral, Florida.

## FACTUAL ALLEGATIONS

13.   This matter arises out of an alleged allision incident involving the insured vessel, a 2022 24' G3 Suncatcher bearing HIN: GEN73721C222 (the "Insured Vessel") owned by Blue Coral, as well as a third-party vessel, a 2016 38' Statement bearing HIN: STTEB07B616 (the "Third-Party Vessel") owned by Ernest Edward Burdette on January 19, 2025 (the "Incident").

14.   As a result of the Incident, both the Insured Vessel and the Third-Party Vessel allegedly sustained varying degrees of damage.

15.   On January 21, 2025, Jeroen Geeraerts of Blue Coral submitted a Claim Notification form relating to the Incident, on a policy of marine insurance that Plaintiffs issued to Blue Coral, Policy Number CSRYP/2407202, with effective dates of October 23, 2024, to October 23, 2025 (the "Policy"). The Cover Note

number for the Insured Vessel is 2407214. A complete copy of the Policy is attached as **Exhibit "A"** and is fully incorporated herein.

16. The Policy provided, *inter alia*, $1,000,000 in third-party liability coverage, subject to a $2,500 deductible, and hull limits pursuant to a Schedule of Vessels of $55,000 for the Insured Vessel, subject to a $1,100 deductible. *See* Exh. A.

17. The Policy also provided, in relevant part, as follows:

**Named Operators:** Jeroen Geeraerts, Mieke Hendrickx, Brian S Obradovic, Peter Obradovic, Koen Roelens; Kevin Van Wulpen; Douglas S Brooks; Regina Brooks; Joseph Tilley, Anthony David Fernandez, Lissa K Fernandez, Don Bouressa, Verne Edward Peake, Justin Mitchell Peake, Zachary Edward Peake, Joshua Scott Wurtsbaugh; Michael Anderson; Dean Schlueter; Lisa Schlueter; Jonathan Lee Granzin; Mike Lawrence; Jeffrey Pelkofer; Randy Fossum; Ronald James Wozny; Mark A Kocer; Danita L Kocer

**Additional Warranties, Terms and Conditions:**

It is warranted that all participants will sign a Concept Special Risks Limited (CSR/WAV/23-1) release of liability, regardless of whether they are paying or complimentary, prior to the commencement of the charter activity, unless otherwise agreed by us, all releases of liability must be retained for seven years and provided to us on request.

*     *     *

**Premier Commercial Yacht Insuring Agreement**

**1. Definitions**

i. "You and Your" refer to the insured named on the Declaration Page and any person who possesses any legal or beneficial interest in any corporation, trust or entity either declared as the owner of the Scheduled Vessel or as an additional assured.

iii. "Covered Person," means You, and/or any person detailed on Your application form which has been submitted by You and approved by Us, provided that person has been declared to Us in writing as an operator of the Scheduled Vessel.

xi. 'Seaworthy' means fit for the Scheduled Vessel's intended purpose. Seaworthiness applies not only to the physical condition of the hull, but to all its parts, equipment and gear and includes the responsibility of assigning an adequate crew. For the Scheduled Vessel to be seaworthy, it and its crew must be reasonably proper and suitable for its intended use.

*   *   *

**2. Insuring Agreement**

This is a legally binding insurance contract between You and Us, incorporating in full the application form signed by You. We will provide the insurance coverage described in this Insuring Agreement, in return for payment to Us of the premium due and compliance by Covered Persons with the provisions, conditions and warranties of this Insuring Agreement. In the event of loss and damage to the Scheduled Vessel covered herein, cost of repairs to be paid without depreciation, new for old, except with regard to sails and covers of canvas or other like materials.

*   *   *

**4. Coverage B. Third Party Liability**

If a sum insured is shown under Section B of the Insuring Agreement Declaration Page, We provide coverage for any sum or sums which You or any other Covered Person become legally liable to pay and shall pay as a result of ownership or operation of Scheduled Vessel.

We will settle or defend as We deem appropriate any claims or suits brought against You, using attorneys of Our choice where We deem necessary. Our obligation to settle or defend all third party liability claims under this Insuring Agreement ends when the amount We pay for damages, investigation costs, legal expenses and removal of wreck equals the sum insured under this section of the Insuring Agreement.

The Deductibles shown on the Insuring Agreement Declaration Page shall apply to each third party
liability claim.

*   *   *

**9. General Conditions & Warranties**

i. It is warranted that the Scheduled Vessel is Seaworthy at all times during the duration of this Insuring Agreement. Breach of this warranty will void this Insuring Agreement from its inception.

ii. This Insuring Agreement incorporates in full Your application for insurance and together with any endorsements issued herein, constitutes the entire contract between You and Us. At Your request, various provisions of this Insuring Agreement may be varied by Us but only by Our prior written agreement.

ix. It is warranted that Covered Persons must at all times comply with all laws and regulations, governing the use and or operation of the Scheduled Vessel. We shall not be deemed to provide cover or shall We be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose Us to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic
sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

xii. This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to Our acceptance or continuance of this insurance. No action or inaction by Us shall be deemed a waiver of this provision.

xix. Where any term herein is referred to as a 'warranty' or where any reference is made herein to the word 'warranted', the term shall be deemed a warranty and regardless of whether the same expressly provides that any breach will void this Insuring Agreement from inception, it is hereby agreed that any such breach will void this Insuring Agreement from inception.

xxii. It is warranted that the Scheduled Vessel will be operated only by Covered Persons. However, in the event of an incident occurring when the Scheduled Vessel is being operated by any person other than a Covered Person, that may give rise to a claim under this Insuring Agreement, You have a period of seven days following such an incident to submit details of the operator for retroactive
approval by Us.

xxv. It is warranted that all participants will sign a release of liability, regardless of whether they are paying or complimentary, prior to the commencement of any charter activity, unless otherwise agreed by Us and that any person who does not sign or refuses to sign this release shall not be permitted to participate in any activity.

*   *   *

**Bareboat Charter Endorsement**

It is hereby noted and agreed that coverage is extended for the Scheduled Vessel to be used for Bareboat Charter. A Renter of the Scheduled Vessel is deemed an Additional Assured subject to the Additional Assured Endorsement and a Covered Person as per the Insuring Agreement and provided always that:

1. When underway, the Scheduled Vessel is under the command of a competent person who holds all appropriate qualifications required by any applicable regulations and as detailed within the Bareboat Charter Supplementary Sheet which will be incorporated in its entirety into any relevant policy of insurance where Insurers have relied upon the information contained therein.

The Assured and/or the Manager detailed on the Declaration Page of the Insuring Agreement shall be responsible for verifying the qualifications,

experience and suitability of the Charterer and to properly instruct them on the handling of the Scheduled Vessel including but not limited to the use of the "Emergency Manual" before handing the scheduled Vessel over to the Charterer.

**Additional Assured Endorsement**

Notwithstanding the fact that such parties as advised are hereby named in their capacity as advised as Additional Assured in this Insuring Agreement, this cover will only extend insofar as they may be found liable to pay in the first instance for liabilities which are properly the responsibility of an Assured, and nothing herein contained shall be construed as extending cover in respect of any amount which would not have been recoverable hereunder by the Assured had such claim been made or enforced against them. Once indemnification hereunder has been made there shall be no further liability hereunder to make any further payment to any person or company whatsoever, including the Assured, in respect of that claim.

All rights granted to Us together with all duties of an Assured under this Insuring Agreement shall also apply to any other named Additional Assured jointly.

**ALL OTHER TERMS CLAUSES AND CONDITIONS REMAIN UNALTERED.**

\*     \*     \*     \*     \*

*Id.*

18.    Following receipt of notification of the loss, Plaintiffs launched an investigation into the Incident to determine whether or not there is coverage under the Policy.

19. As part of Plaintiffs' investigation, they determined that, at the time of the loss, Blue Coral rented the Insured Vessel to John Elliot Neff ("Neff Jr."), who was the renter and sole authorized operator.

20. The Insured Vessel had been docked at Deep Lagoon Seafood, located at 14040 McGregor Blvd, Fort Myers, Florida 33919, when Neff Jr. was pushing the Insured Vessel from the dock while his father, John Peter Neff ("Neff Sr.") was at the helm. Neff Sr. attempted to back the Insured Vessel but heard somebody saying, "Stop!" Neff Sr. reacted abruptly by shifting into forward gear and inadvertently engaging excessive throttle.

21. The Insured Vessel, occupied by four (4) people, surged ahead with the front of the Insured Vessel alliding and riding up and over the stern and triple outboards of the Third-Party Vessel, which was unoccupied.

22. The allision resulted in the Third-Party Vessel's dock lines breaking loose and the Third-Party Vessel riding up and coming to rest on top of the dock.

23. Florida Fish and Wildlife Conservation Commission ("FWC") reported the weather at approximately 3:00 p.m. consisted of an air temperature of 70 degrees, good visibility, calm water conditions, light wind (0-6 mph), with no water current. FWC indicated the incident occurred as a result of "Operator Inattention" on the part of Neff Sr. FWC noted that there were no injuries.

24. Following the incident, in addition to Neff Sr. being an unauthorized operator, it was revealed that liability waivers were not signed by the renter or occupants of the Insured Vessel, which was a requirement under the subject Policy.

25. Upon determining the lack of coverage and Blue Coral's breach of multiple warranties in the Policy, Plaintiffs reserved their rights and filed this action seeking declaratory judgment that the Policy is void from inception only as it relates to Cover Note No. 2407214.

## COUNT I – BREACH OF LIABILITY RELEASE WARRANTY

26. Plaintiffs reassert and reallege the allegations contained in paragraphs 1-25 above as if fully set forth herein.

27. The Policy contained two substantially identical release warranties.

28. One of those warranties appeared on the declarations page warranted that "all participants will sign a Concept Special Risks Limited (CSR/WAV/23-1) release of liability, regardless of whether they are paying or complimentary, prior to the commencement of the charter activity, unless otherwise agreed by us, all releases of liability must be retained for seven years and provided to us on request." *See* Exh. A.

29. The other warranty appeared as General Condition xxv. and warranted that "all participants will sign a release of liability, regardless of whether they are paying or complimentary, prior to the commencement of any charter activity, unless

otherwise agreed by Us and that any person who does not sign or refuses to sign this release shall not be permitted to participate in any activity." *Id.*

30. Blue Coral failed to have all the passengers sign a liability waiver as required by the Policy's warranties.

31. At the time of the Incident, Plaintiffs had not "otherwise agreed" that Blue Coral was not required to obtain liability waivers before commencing charters.

32. Under New York law, which governs the Policy in the absence of entrenched federal maritime law, express warranties in marine insurance policies are strictly enforced, and a breach thereof voids coverage irrespective of any causal relation to the loss.

33. Furthermore, General Condition xix. of the Policy provides that "any such breach [of warranty] will void this Insuring Agreement from inception." *Id.*

34. Regardless, a failure to obtain a liability waiver from the passengers may have deprived both Blue Coral and Plaintiffs of a potential defense.

35. As a result, both of the Policy's release warranties were violated, and pursuant to General Condition xix., the Policy is void from its inception only as it relates to Cover Note No. 2407214.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to adjudge and declare that the Policy does not provide coverage for any claims arising from or associated with the Incident only as it relates to Cover Note No. 2407214.

Plaintiffs further request such other relief as the Court may deem just and appropriate under the circumstances.

## **COUNT II – BREACH OF NAMED OPERATOR WARRANTY**

36. Plaintiffs reassert and reallege the allegations contained in paragraphs 1-25 above as if fully set forth herein.

37. General Condition xxii. of the Policy warrants that the Vessel "will be operated only by Covered Persons," which are defined by the Policy as "any person detailed on Your application form which has been submitted by You and approved by Us, provided that person has been declared to Us in writing as an operator of the Scheduled Vessel." *Id.* The Policy further defines 'You and Your' as the insured named on the Declaration Page and any person who possesses any legal or beneficial interest in any corporation, trust or entity either declared as the owner of the Scheduled Vessel or **as an additional assured**. *Id.*

38. The warranty provides that "in the event of an incident occurring when the Scheduled Vessel is being operated by any person other than a Covered Person, that may give rise to a claim under this Insuring Agreement, You have a period of seven days following such an incident to submit details of the operator for retroactive approval by Us." *Id.*

39. While the above-referenced Bareboat Charter Endorsement deems the renter (Neff Jr.) an Additional Assured, Plaintiffs' post-loss investigation revealed

13

Neff Sr. was at the helm at the time of the incident. Accordingly, Neff Sr. was not a Named Operator under the Policy.

40. Under New York law, which governs the warranty in the absence of entrenched federal maritime precedent, breach of an express warranty in a marine insurance warranty voids coverage under the Policy, irrespective of whether the breach of warranty was causally related to the loss.

41. A person other than Neff Jr. or another specifically identified Named Operator operating the Insured Vessel constitutes a breach of this provision.

42. While a Named Operator Form was submitted on February 24, 2025, for Neff Jr. and Neff Sr., this was not done until thirty-six days following the loss.

43. As a result of said breach, there is no coverage under the Policy only as it relates to Cover Note No. 2407214.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to adjudge and declare that Blue Coral breached the named operator warranty, and that as a result, the Policy is void from its inception and does not provide coverage for any claims arising from or associated with the Incident only as it relates to Cover Note No. 2407214. Plaintiffs further request such other relief as the Court may deem just and appropriate under the circumstances.

Dated: August 26, 2025.

                              Respectfully submitted,

                              **DAVANT LAW, P.A.**
                              *Attorneys for Plaintiffs*
                              12 Southeast 7th Street, Suite 601
                              Fort Lauderdale, FL 33301
                              Telephone: (954) 414-0400

By:  */s/ Charles S. Davant*
       Charles S. Davant
       Florida Bar No. 15178
       csd@davantlaw.com
       Brandon Bushway
       Florida Bar No. 1015247
       beb@davantlaw.com